Error.

S. LOWMAN & CO. v. T. J. BALLARD.

(Filed 13 January, 1915.)

1. Judgments—Proceedings to Set Aside—Motions in the Cause.

Where a judgment obtained before a justice of the peace is sought to be set aside by the defendant for lack of service of summons, the remedy is by motion in the cause made before the court which had rendered the judgment.

2. Same—Limitations as to Time.

The statutes limiting the time within which motions shall be available to set aside judgment to one year applying to judgments in all respects regular, do not apply to where there has been defective service of the summons in the action or entire absence of it.

3. Process—Service—Methods Prescribed—Interpretation of Statutes.

Where a statute provides for service of summons or notices in the progress of a cause by certain persons or designated methods, the specified requirements must be complied with in order to make a valid service of the process.

4. Same—Telephones—Interpretation of Statutes.

Revisal, sec. 439, providing that the summons in an action "shall be served . . . by the sheriff or other officer reading the same to the party or parties named as defendant, and such reading shall be a legal and sufficient service," was originally enacted by the Legislature of 1876-77, and at a time when the telephone, as a general means of communication was not in existence, and when the only method of service of process contemplated or provided for was the reading of the summons by the sheriff or other officer in the personal presence of the party to be served, contemplating the exhibition of the process to the party and affording him and the officer greater assurance, on the one hand, of its validity, and, on the other, that the person was the one designated.

Hence, service of summons over a telephone line, the parties being necessarily separated and the method not contemplated by the statute, is not valid.

CLARK, C. J., dissenting; ALLEN, J., concurring in the dissenting opinion.

APPEAL by defendant from *Shaw, J.,* at April Term, 1914, of ANSON.

Motion to set aside judgment, heard on appeal from a justice's court.

On the hearing it appeared that in 1911 plaintiff instituted an action on account against defendant, before a justice of the peace in said county, and on 16 March, 1911, recovered judgment for $173.75, defendant not appealing at this time; that defendant instituted a civil action against plaintiff to set aside said judgment, claiming that he owed plaintiff nothing and that he had never been served with summons in said cause, and, for many months after its rendition, he had no notice or knowledge of the existence of the judgment or of any suit against him by plaintiff.

Judgment in that cause was entered in favor of the present plaintiff, and, on appeal, judgment was affirmed, the court being of opinion that, on the facts presented in that record, defendant could only proceed by motion before the justice to set aside the judgment. See case, *Ballard v. Lowry,* 163 N. C., 487. Pursuant to that intimation, defendant, on notice duly served, made the present motion to set aside the judgment before the justice, J. H. Benton, Esq., and on the ground, among others, that the summons in the action had been originally served by telephone, the sheriff being at Wadesboro and defendant at Morven, 9 miles distant.

On the hearing the justice found that the sheriff had "read the summons by telephone to defendant, and, recognizing that it was defendant, by conversation had between them at the time he had made the return on the process served," etc. The justice being of opinion that there had been a valid service, refused to set aside the judgment, and on appeal to Superior Court this ruling was affirmed, the material portion of his Honor's judgment being as follows: "The court finds as a fact that J. T. Short was a deputy sheriff of Anson County on 27 February, 1911, and read the summons issued in said cause by said justice of the peace to the defendant T. J. Ballard over the telephone line connecting Wadesboro and Morven, and that the said deputy sheriff was well acquainted with said defendant and recognized his voice over the telephone in the conversation between them at said time, whereupon said deputy sheriff made the return and indorsement upon the summons. Upon these facts the court finds that, as a matter of law, said service and reading of said summons over the telephone was a legal and valid service of said summons, and the court so holds. From this judgment the defendant excepts and appeals to the Supreme Court."

*Gulledge & Boggan for plaintiffs.*
*Lockhart & Dunlap for defendant.*

168—2

HOKE, J. (On the facts appearing of record, and in like case whenever the remedy is available to him, the procedure open to defendant is by motion before the justice who tried the cause.) This was virtually held on a former appeal between the parties, 163 N. C., 486, and the position is in accord with our decisions on the subject. *Thompson v. Notion Co.,* 160 N. C., 519; *Clark v. Mfg. Co.,* 110 N. C., 111; *Whitehurst v. Transportation Co.,* 109 N. C., 342; *McKee v. Angel,* 90 N. C., 60.

In *Thompson v. Notion Co., supra,* that being a case where service had been regularly made by publication and defendant had neither appeared nor answered, the decision was made to rest on section 1491 of Revisal, which allowed an appeal to be taken in such cases within fifteen days after personal notice of the rendition of the judgment, but *Associate Justice Allen,* in his well considered opinion, is careful to note that, in case of "defective process, or where there is the appearance of service when in fact there was none, the remedy by motion before the justice is properly available."

Both in the Superior and justices' courts the statutory limits as to time within which motion of this character shall be made are cases where the proceedings are in all respects regular, and do not apply in cases when there is defective service of process or an entire absence of it. *Massey v. Hainey,* 165 N. C., 174; *McKee v. Angel,* 90 N. C., *supra.*

Authority here is also to the effect that where a statute provides for service of summons or notices in the progress of a cause by certain persons or by designated methods, the specified requirements must be complied with or there is no valid service. *Martin v. Buffalo,* 128 N. C., 305; *Smith v. Smith,* 119 N. C., 314; *Allen v. Strickland,* 100 N. C., 225; *McKee v. Angel, supra.*

This, then, being proper procedure, and the only service of the original process in this cause having been by means of the telephone, "the sheriff being at Wadesboro and defendant at Morven, 9 miles distant," the question chiefly and directly presented by this appeal is whether, in this jurisdiction, there can be a valid service of original process by means of the telephone. (Our statute on the subject (Revisal, sec. 439) provides that the summons "shall be served, in all cases except as hereinafter provided, by the sheriff or other officer reading the same to the party or parties named as defendant, and such reading shall be a legal and sufficient service.)

This method of serving process was established by the Legislature of 1876 and 1877, and at the time the telephone as a general system of communication was not in existence. An interesting account of its origin and development will be found in 126 U. S. Reports, the volume being devoted to a report of the telephone cases, from which it appears that the patents were applied for in 1876; that the litigation concerning

them was continued for something over eleven years, and it was not until 1887 that decision was made declaring the rights in dispute to be in Professor Bell and his associates, and although the active development of the system was immediately and successfully entered upon, the telephone, as now operated, did not come into very general use and application until about the beginning of the present century, or a short period preceding that date.

(At the time, therefore, when this legislation was enacted, the only method of service contemplated or provided for was by reading the summons in the personal presence of the party, and we are of opinion that this is and should continue to be the correct interpretation of the statute as it is now written.) This service of original process by which courts of justice acquire jurisdiction over the rights of person and of property of the citizen has always been, and properly, regulated with circumspect care. In the Code of '68 it could only be done by leaving a copy of the summons under the court seal; later, in '76 and '77, the seal was omitted when the process ran to the county of the officer who issued it and, at the same session, a service by reading by the sheriff or some officer was established; both of these changes, it will be noted, being by legislative enactment. And this method of service, by reading in the personal presence of the party, affording as it does to the sheriff a more satisfactory and certain means of identifying the person on whom the service is made and giving assurance to the litigant of the true import of the act by present exhibition of the process, giving him better opportunity, too, to ascertain the position and authority of the officer, and being the method contemplated and described by the statute at the time it was passed, and the only one recognized for twenty years thereafter, should not be altered, if at all, save by express provision of the statute law.

The only valid objection to be made to this position is that it may, at times, make for the inconvenience of the officer; but, even as to him, the proposed change is of doubtful benefit. We know that a sheriff or other officer having a process of this character in charge is properly held to a strict account as to the verity of the service. If he makes a false return, he and his bondsmen may be subjected to serious penalties, and, looked at only from the officer's point of view, there is grave question if in the effort to perform this important duty he should be subjected to the additional uncertainties, sure to arise by recognizing the proposed manner of service.

On authority the question does not seem to have been very much discussed in the courts. The nearest case we have been able to find on the subject is in *Ex Parte Terrel,* Court Criminal Appeals, Texas, reported in 95 S. W., 536. That case was an attachment for contempt against a defaulting witness, their statute requiring service of subpœna by "read-

ing same in the hearing of the witness," and it was held that service by telephone was no valid service; and the position derives some support in a New York case of *Gilpin v. Savage,* 201 N. Y., 167, to the effect that presentment of a note and demand for payment must be by actual exhibit of the instrument, and that a demand made by telephone was insufficient. (We are aware that in a number of cases it has been held that, under regulations requiring service of notices to be in writing, service by means of a telegram, written out by the agent and delivered, has been upheld; but these were generally in instances where the parties had voluntarily adopted that method of communication.) And where the principle has been approved in reference to court process, the statute did not require that service be made by any particular or designated person, and the party being charged with the duty of having the notice served, the Court has held that such party could make the company his agent to write the notice, within the meaning of the law. Such was the case presented in *Western Union v. Bailey,* 115 Ga., 725, a case to which we were cited.

On service of writs of *certiorari* the statute required that the applicant should cause written notice of its proper sanction to be served on his opponent, and service by telegram was upheld, on the ground that, as the statute required the party to cause notice to be served and did not designate by whom, the plaintiff could designate the company as his agent, and the notice so written out would be considered a sufficient compliance with the law. Even in that aspect the case seems to have caused the Court much perplexity, and one of the judges dissented.

Again, there are cases in which notices of injunction were served by telegram and the service was sustained, but these decisions were in application of the principle declared by the English chancellors, to the effect that, under certain circumstances, if a party in an injunction proceeding knew of the existence of the order, and intentionally violated it or knowingly or intentionally acted so as to render the same of noneffect, he could be held for contempt. *Vansandan v. Rose,* 2 Jac. and Walker, 264; *Osborne v. Tenant,* 14 Ves., 136; *Rulings by Lord Chancellor Elden,* the first referred to in *Cape May R. R. v. Johnston,* 35 N. J. Eq., pp. 422-425, and the second in *Davis v. Fiber Co.,* 150 N. C., 87, erroneously printed in this last citation as Lord Erskine. But, while this ruling may be upheld in proceedings of that character, the exigency of the case at times requiring the recognition of such a principle, it should not be allowed to prevail in reference to the service of original process where, as in this case, the statute, as heretofore stated, at the time it was enacted contemplated and provided for a service by reading the writ in the personal presence of the party, and involving, too, the necessary exhibition of the process to the litigant.

LOWMAN *v.* BALLARD.

On the facts in evidence, we are of opinion, and so hold, that there has been no valid service of process shown, and this will be certified, that the judgment of the justice's court be set aside and defendant allowed to answer.

Reversed.

CLARK, C. J., dissenting: Revisal, 439, provides that the summons shall be served by the officer "reading the same to the defendant, and such reading shall be a legal and sufficient service." *All this has been done in this case.* Unless the court can legislate by putting into the statute what the Legislature has not yet thought proper to put therein, this is "a legal and sufficient service." The summons, it is found as a fact, was read by the sheriff to this defendant, and indeed there is no question as to that fact or as to his being sheriff or as to the identity of the defendant. What more can be necessary? Whether or not there might be greater or less certainty as to the identity of the defendant, in service by phone, when he is brought to the phone by an agent of the sheriff, or the sheriff recognizes him, is a matter for the Legislature, if that body should find that the law needs amendment.

As to the identity of the sheriff, that is a matter for the court on the service of every process which is authenticated by his signature. As to the identity of the defendant, the officer takes that risk, whether he sees him (for he may not know him personally except by information) or phones him. The sheriff is under the highest obligations to be certain as to the identity of the defendant, for he is acting under the oath of his office and is also liable under a heavy penalty for making a false return.

The law does not require that the sheriff shall "leave a copy" with the defendant. That was long since dispensed with. Nor has it ever required that he should see the defendant. There can be no question that a nearsighted sheriff or deputy could serve process, the identity of the defendant being in all cases a matter of which the officer must assure himself under liability to a penalty. If there is a mistake as to the identity of the defendant, he can avail himself of it equally whether the sheriff is immediately present, or is blind, or speaks over the phone. In the Trojan War Stentor made his summons to surrender to the enemy on the walls of Troy at a good distance, out of the reach of arrows, and the service was sufficient. In fact, in former days the heralds of opposing armies served their summons at a good distance by trumpet.

There is no statute and no decision that requires that the defendant shall see the paper, or read it himself, or that he shall know the identity of the officer. The court knows its own officers, and the defendant takes the risk if he does not recognize the officer's authority. The officer takes the risk under his oath, and under a penalty, if he mistakes the identity

of the defendant. Whether the service is on a defendant who was personally present or who is at the end of a phone, these principles apply.

In this day there is an urgent demand that courts shall reduce the time and expense of proceedings. Why should an officer ride all night over bad roads, and in bad weather, at great expense, to read a summons or a subpœna to a party who is needed in court next morning, when he can read the paper as intelligently to the party over the phone and with as much certainty of his identity as if he went to the locality and hunted him up. Indeed, when the service is made by phone the officer will take even greater precautions, because he cannot reach the party in that way unless he is brought to the phone, at his request by some agent of the sheriff, or voluntarily remains at the phone till the reading is completed.

It is suggested that "service by phone is not safe." Millions of dollars in contracts are made every day over the phone, often at a long distance, between parties who do not see each other, but who are satisfied of each other's identity, by taking proper precautions. The great transportation systems of the country find it safe to use the telephone in controlling the movements of trains on which depend the safety of thousands of lives and millions of property daily. Great armies, on whose movements rest the destiny of nations and the lives of thousands of men, are risked, every day, on the use of the telephone. Over the phone doctors give prescriptions on which the lives of patients depend, and lawyers give advice on which rest the disposal or transfer of property. Yet we are asked to say that it is unsafe for this officer to notify this defendant to appear before a magistrate in a small action involving a few dollars when it is found as a fact that this defendant was the proper party, that the officer was duly authorized, and that he fully read this summons to this defendant as required by the statute!

Why should the courts alone be deprived of the advantages of modern improvements, and retain every antiquated method as to service or as to pleadings, on the ground that it was "not thus done under the Saxon Heptarchy"? It is a great saving of useless expense and of time to use this method of summoning jurors and witnesses and parties over the phone, of which bank officials, business men, railroad officers, and everybody else avail themselves. Indeed, there is less risk of imposition as to identity in the service of a summons or subpœna than in any of the other businesses of life, for the reason that the officer being under a penalty for making an erroneous return, will take extra care in that regard. Besides, the party who is served can rarely, if ever, have any motive to assume to be the defendant when he is not. Moreover, he waives any other service, as this defendant did, by remaining at the phone until the entire summons is read to him.

If an officer should read a summons to a man on the other side of a screen, or of a curtain, or in another room; and his identity is certain, as is found in this case, and his hearing it is not denied, this surely would be sufficient. The invention of the phone has merely extended the range of the voice of the officer and of the hearing of the defendant.

The statute does not require that the officer should return that he *"saw the defendant and read the summons to him."* But it only requires "reading the same to defendant, and such *reading* shall be a legal and sufficient service." For the Court to add the requirement that the officer "saw the defendant" is legislation by the Court, and will make a very considerable addition. of trouble and expense to the officers which the Legislature has not placed upon them.

Whether the officer sees or does not see the defendant, it is a defense that he was not an officer, or that there was a mistake of identity as to the defendant, or that the summons was not read to him. These defenses are in no wise affected by the circumstance that the summons was read over the phone, or at a distance, or to one in another room. The statute does not require the immediate presence of the defendant.

A captive with the Indians who received a letter told the chief its contents and from whom it came. The chieftain took the letter. He looked at it and saw nothing on it to that purport. He put it to his ears and heard nothing. He smelt of it and perceived nothing. He said that his captive was either a liar or a witch, and in either event he ought to be burned, and burned he was. The chief knew no other than oral means of communication.

When the invention of the telescope vastly extended human vision, Galileo, gauging the starry depths, announced that the world revolved around the sun, and not the sun around the world. The ignorant priests condemned him to be burned, and he only escaped by taking it back.

The most ignorant man in North Carolina now knows that by the invention of the telephone the range of the human voice and of human hearing has been lengthened. When this summons was read to the defendant by the officer over the phone (all of which are found as facts), it was the officer's voice and not a substitute—as in the case of a telegram or letter—which the defendant heard, and the officer truly reported, as is found, that he had "read" the summons to him. The statute requires nothing more, and there is no reason that it should. A few years ago it might have been asserted that thus reading a summons to a man 9 miles off was a physical impossibility, and therefore on its face untrue. But modern invention has made it an ordinary occurrence. A conversation over the phone is competent in evidence; why not the "reading" of a summons, when the identity of the party is found as a fact?

This system of serving summonses and subpœnas is a great saving of expense and of time. It has been much resorted to in the courts, and now to hold it illegal may jeopardize the validity of many legal proceedings which have been based upon such service. In a practical age there is no reason why the courts should not avail themselves of the same conveniences which business men and indeed all others customarily use and have found to be safe and reliable as well as convenient. No statute forbids it, and the courts, in actual practice, have recognized and used it.

NOTE.—The General Assembly being in session, at once passed chapter 48, Laws 1915, authorizing service over the phone of subpœnas for witnesses and in summoning jurors, leaving still without legislation only the service of summons for defendants, which, however, is probably only about one-twentieth of the business, as witnesses and jurors are thus notified in both criminal and civil cases.

ALLEN, J., concurs in dissenting opinion.