IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-788

Filed 1 October 2025

Pitt County, No. 21SP000260-730

IN THE MATTER OF: FORECLOSURE OF A CLAIM OF LIEN BY IRISH CREEK SECTION 2 OWNERS' ASSOCIATION, INC. AGAINST TRENITA ROGERS

Appeal by Respondent from an order entered 6 December 2023 by Judge Jeffery B. Foster in Pitt County Superior Court dismissing appeal of orders entered 8 February 2023 and 3 March 2023. Heard in the Court of Appeals 9 April 2025.

> *Q Byrd Law, by Quintin D. Byrd, for Respondent-Appellant.*

> *Jeremy Clayton King, P.A., by Jeremy C. King, for Irish Creek Section 2 Owners Association, Inc., Petitioner-Appellee.*

> *Jordan Price Wall Gray Jones & Carlton, PLLC by Hope Derby Carmichael and Frank W. Bullock III, for Hope Derby Carmichael, Trustee, Petitioner-Appellee.*

> *Christopher P. Edwards, Attorney, PLLC, by Christopher P. Edwards, for Woodson Furlough Jr., Petitioner-Appellee.*

WOOD, Judge.

Respondent-Appellant Trenita Rogers ("Rogers") appeals to this Court by petition for writ of certiorari for review of five orders stemming from the foreclosure of her home: (1) The 7 December 2023 order dismissing Rogers' appeal; (2) the 8 February 2023 order denying Rogers' amended motion to set aside foreclosure; (3) the 3 March 2023 order awarding additional Trustee fees; (4) the 14 March 2023 order

granting the HOA's motion for attorneys' fees; and (5) the 14 March 2023 order granting Woodson Furlough, Jr.'s motion for attorney's fees. On 10 May 2024, this Court granted Rogers' petition with respect to the 7 December 2023 order and granted Rogers' petition as to the 8 February 2023, 3 March 2023, and two 14 March 2023 orders, "without prejudice to reconsideration by the panel to which this matter is assigned should that panel determine [the trial court] did not commit reversible error in dismissing petitioner's appeal." After careful review of the record and applicable law, we hold the trial court committed reversible error by dismissing Rogers' appeal. We reverse and remand the trial court's 8 February 2023 order denying Rogers' amended motion to set aside foreclosure, and we vacate the trial court's subsequent orders.

## I.    Factual and Procedural Background

Rogers purchased a single-family home located at 305 Boyne Way, Winterville ("Subject Property"), in January 2010. The Subject Property is, and has been since the time of purchase, located within the Irish Creek Section 2 Owners' Association, Inc. development ("Irish Creek HOA"). The Subject Property remained Rogers' primary residence during all relevant times of the case proceedings.

On 24 March 2021, the Irish Creek HOA sent a demand letter to Rogers via first-class mail stating she owed $1,391.23 in unpaid homeowner's association assessments. The letter stated that payment in full could be made within fifteen days of receipt without incurring additional attorney costs and fees in regard to collection

of this debt. If the amount was not paid, Irish Creek HOA would turn the account over for collection to Jordan Price Wall Gray Jones & Carlton ("Jordan Price"), and Rogers would be responsible for fees and costs incurred with collecting the debt. Rogers did not satisfy the unpaid assessments owed to Irish Creek HOA within the fifteen-day period provided.

On 3 May 2021, Irish Creek HOA filed a Claim of Lien ("COL 1") in the amount of $1,391.23 plus $350.00 in costs and attorney fees against the Subject Property. Within COL 1, Irish Creek HOA appointed Hope Derby Carmichael ("Trustee") as Trustee for the foreclosure. Trustee certified to the court that the COL 1 was sent via first-class and certified mail with return receipt requested to Rogers at the Subject Property. However, the record on appeal does not contain a copy of the green return receipt card for the COL 1. Trustee provided instead a printout of the United States Postal Service ("USPS") electronic delivery receipt record for COL 1 which states that the certified mail item was "Delivered, Left with Individual" on 3 May 2021, but the electronic delivery receipt record does not contain the name or the first initial or last name of the person with whom it had been left.

On 16 September 2021, Trustee filed a second Claim of Lien ("COL 2") in the amount of $1,491.23 plus $1,497.50 in costs and attorney fees against the Subject Property. Trustee certified to the court that COL 2 was sent by first-class and certified mail with return receipt requested to Rogers at the Subject Property. Again, the record on appeal does not contain a copy of the green return receipt requested

card for the COL 2. Instead, Trustee again provided a printout of the USPS electronic delivery receipt record for COL 2 which states that the certified mail item was "Delivered, Left with Individual" on 18 September 2021, but the electronic delivery receipt record does not include the name or the first initial or last name of the person with whom it had been left.

During the Covid-19 pandemic, the USPS instituted and followed alternative Covid-19 protocols for certified mail delivery. Under Covid-19 protocols mail carriers were instructed to knock and, if identification was needed for delivery, to ask the customer to hold their identification up to a window. After checking their identification, the mail carrier was required to enter

> the customer's first initial and last name on their handheld delivery device or hardcopy PS Form 38811 or 3849. In place of the customer's signature, [the mail carrier] printed their own initials, route number, and notation "C19." Rather than handing the item directly to the customer, [the alternative protocol required the mail carrier to leave] the [certified mail] item in the mail receptacle or [an] appropriate location by the door.

U.S. Postal Serv., *Delivering During the COVID-19 Pandemic: How the U.S. Postal Serv. Kept the Nation Connected*, at 13 (Sept. 2022), https://about.usps.com/who/profile/history/pdf/delivering-during-covid-19.pdf [hereinafter *Delivering During COVID-19*]. The electronic delivery receipt for each piece of certified mail sent by Trustee to Rogers at the Subject Property address appears to be initialed by the mail carrier following these protocols in some variation

in lieu of the required "Signature of Recipient." However, no delivery receipt included in the record for any piece of certified mail contains any notation that could appear to be a "customer's first initial and last name."

On 18 September 2021, Trustee filed a Notice of Hearing Prior to Foreclosure Sale ("NOH"). On the same day, the NOH was sent by first-class and certified mail to Rogers at the Subject Property. Trustee again only provided a printout of the USPS electronic delivery receipt rather than a green card return receipt. The USPS electronic record indicates the NOH was "Delivered, Left with Individual" on 21 September 2021. The electronic delivery receipt notation appears to be illegible letters followed by the number 19 with no first initial and last name of the customer. On 17 September 2021, the Pitt County Sheriff's Office attempted personal service of the NOH but the Return of Service on Foreclosure Hearing indicated the NOH was not personally served but was instead posted at the Subject Property. The Return of Service on Foreclosure Hearing was filed on 21 September 2021.

On 24 September 2021, Trustee filed an Amended Notice of Hearing Prior to Foreclosure Sale ("Amended NOH"). The Amended NOH was sent by first-class and certified mail with return receipt requested to Rogers at the Subject Property. Trustee again provided a printout of the USPS electronic delivery record rather than a green return receipt card. This time, the USPS electronic delivery record states the Amended NOH was "Delivered to Agent for Final Delivery" on 27 September 2021. There is no additional information provided regarding final delivery. The electronic

delivery receipt notation appears to be letters followed by the numbers 19 with no first initial and last name of the customer.

On 28 September 2021, the Pitt County Sheriff's Office again attempted personal service of the Amended NOH but the Return of Service on Amended Foreclosure Hearing indicated the Amended NOH was not personally served but was instead posted at the Subject Property. On 29 September 2021, the Return of Service on Amended Foreclosure Hearing was filed. Service by posting had not been ordered or authorized by the court. In an affidavit in support of service by posting filed 21 December 2021, the same day as the foreclosure hearing to authorize sale, Trustee averred the Sheriff's posting of the NOH and Amended NOH was warranted because "service was not otherwise obtainable and those entitled to service were not readily located, despite reasonable attempts."

Rogers did not attend the foreclosure hearing to authorize sale of the Subject Property which occurred before the Assistant Clerk of Superior Court on 21 October 2021. On the same day as the hearing, the Clerk entered an Order Authorizing Sale allowing Trustee to foreclose on the Subject Property. The Clerk found Rogers had received timely and effective notice of the hearing. On 25 October 2021, Trustee sent a copy of the Order Authorizing Sale to Rogers by first-class mail. On 9 December 2021, a Notice of Lien Holder's Sale of Real Property ("Notice of Sale") was filed stating the Subject Property would be sold by public auction on 13 January 2022 at

10:45am at the Pitt County Courthouse. The Notice of Sale was also published once a week for two consecutive weeks in *The Daily Reflector*, a Pitt County newspaper.

From 14 January 2022 to 1 August 2022, more than thirty upset bids were submitted and filed with the Clerk of Superior Court. A copy of each bid was sent to Rogers by first-class mail. The final and highest upset bid was submitted by Appellee Woodson Furlough, Jr. ("Furlough") in the amount of $221,618.32 on 1 August 2022. On 31 August 2022, Trustee executed a Trustee's Deed to convey the Subject Property to Furlough and recorded it on 1 September 2022.

On 14 September 2022, Trustee executed an Affidavit in Support of Final Report and Account of Foreclosure Sale and an Affidavit Regarding Surplus Funds, both sent by first-class mail. On 21 September 2022, Furlough filed a Petition for Possession of Foreclosed Real Estate and sent Rogers a Notice to Vacate via first-class and certified mail. On 23 September 2022, the Final Report and Account of Foreclosure Sale was filed.

Although Rogers resided at the Subject Property during all relevant times, she did not respond to any notice, mailing, posting, or newspaper advertisement for the foreclosure. Rogers claims she first learned of the foreclosure when Furlough contacted her directly by telephone in late August 2022.

On 11 October 2022, Rogers filed a Motion for Relief from Judgment pursuant to N.C. Gen. Stat. § 1A-1, Rule 60 in which she averred that because she had never been properly served with either the NOH or the Amended NOH, the trial court

lacked jurisdiction over her to authorize the sale of the Subject Property and, therefore, the Order Authorizing Sale was void.

On 8 November 2022, Rogers filed an Amended Motion to Set Aside and Vacate Order of Foreclosure ("Amended MSA") pursuant to N.C. Gen. Stat. § 1A-1, Rule 60(b) and (c) and filed an affidavit asserting, in pertinent part:

> 7. I was not aware that my property was located within a Homeowners' Association until after the foreclosure hearing and bidding period.
>
> 8. I cannot recall ever receiving any bills from Irish Creek Section 2 Owners Association, Inc., and do not believe I ever received such bills.
>
> 9. I did receive letters from Jordan, Price, Wall, Gray, Jones & Carlton PLLC ("Jordan Price"), but I did not receive certified mail from that firm.
>
> 10. I believed that the letter from Jordan Price were legal advertisements and junk mail.
>
> 11. I was never served with a notice of hearing in this matter by a sheriff.
>
> 12. I was never served with a notice of hearing by certified mail.
>
> 13. I did not see any notices posted at my property.
>
> 14. I did not know about the foreclosure hearing until after the hearing was completed, an order authorizing sale of the Property was entered, and the foreclosure bidding period had ended.
>
> 15. I would have been able to pay the arrears in HOA assessments if I received notice of the foreclosure hearing.

16. I would, in fact, have paid the arrears in HOA assessments if I received such notice.

On 14 November 2022, Rogers filed a Motion for Injunctive Relief pursuant to N.C. Gen. Stat. § 1A-1, Rule 65, asserting that the sale price was grossly inadequate and requested that the court prohibit Furlough from disposing of Rogers' personal property until the Rule 60 Motion could be heard. A Superior Court judge granted her Rule 65 motion for a temporary restraining order ("TRO"). On 9 December 2022, the Rule 60 hearing took place before the Assistant Clerk of Court and an order denying Rogers' motions was entered on 15 December 2022.

The Clerk took judicial notice of a prior Claim of Lien filed by Irish Creek HOA in September 2013 which was "canceled due to payment to the claimant on October 15, 2013." The Clerk found "Rogers stated that she did not know who had paid the 2013 Claim of Lien and did not know anything about any of the Claims of Lien at all." Further, the Clerk found Rogers had contemplated selling the Subject Property in 2015 and had filled out and signed four times a Residential Property and Owners' Association Disclosure Statement that named Irish Creek HOA and noted the assessments of $10 per month.

On 22 December 2022, Rogers filed a notice of appeal from the order filed 15 December 2022 denying her Amended MSA. Rogers appealed the matter to Superior Court.

A *de novo* foreclosure hearing was conducted in Superior Court on 24 January 2023. The trial court heard extensive arguments regarding whether service and notice of the foreclosure were improper or insufficient, and specifically, whether service was impacted by the USPS certified mail COVID protocols. Ultimately, in an order filed on 8 February 2023, the trial court made the following conclusions of law:

> 11. [Trustee] submitted prima facie evidence that she achieved proper service upon Ms. Rogers under Rule 4 of the North Carolina Rules of Civil Procedure.
>
> . . . .
>
> 14. Ms. Rogers' failure to open 40+ pieces of mail which the trustee sent to her, any one of which would have notified her of these proceedings and permitted her to take action prior to the sale becoming final, is inexcusable neglect.
>
> 15. Service of the Amended NOH upon Ms. Rogers complied with the requirements of Rule 4 of the North Carolina Rules of Civil Procedure and other applicable North Carolina Law and satisfied due process requirements of the North Carolina and United States Constitutions.
>
> 16. "If a property owner receives actual notice of the foreclosure hearing and could have taken advantage of the relief provided in N.C. Gen. Stat. § 45-21.34, assuming he had grounds, or he could have objected to the method of service, the property owner cannot later argue service on him was inadequate." *Adams v. Bank United of Texas FSB*, 167 N.C. App. 395, 405, 606 S.E.2d 149, 156 (2004).

During this hearing, Trustee served a Motion for Additional Fees upon Rogers' counsel that Trustee had filed that morning. Furlough's counsel and counsel for Irish Creek HOA gave notice of their intentions to file motions to recover attorneys' fees,

which were subsequently filed on 27 January 2023 and on 7 February 2023. After the hearing, Rogers filed motions in opposition to each on 6 February 2023, 8 February 2023, and 15 February 2023. The trial court filed an order dissolving the 14 November 2022 TRO on 1 February 2023, giving Rogers twenty days to remove her personal belongings from the Subject Property.

On 3 March 2023, the trial court entered an Order Awarding Additional Trustee's Fees and Costs. The trial court awarded Trustee "fees and costs incurred in defending Ms. Rogers' meritless Amended Motion in the total amount of $15,737.00 as supported by the Affidavit filed by [Trustee]." On 14 March 2023, the trial court entered two additional attorney's fees orders: one awarding $4,260.00 to Irish Creek HOA and one awarding $6,465.35 to Furlough for fees and costs incurred to defend "Ms. Rogers' meritless Amended Motion."

On 27 March 2023, Rogers filed, *pro se*, a Notice of Appeal ("NOA") to this Court pursuant to Rule 3 from the 3 March 2023 Order Awarding Additional Trustee's Fees and Costs and the 8 February 2023 order denying her Amended MSA that was served on 23 February 2023.

After filing a *pro se* NOA, Rogers contacted Attorney Quintin Byrd ("Byrd") for assistance but did not formally retain him as counsel at this time. Rogers hoped to save money by ordering the hearing transcripts herself so that she could retain Byrd as counsel by the time required to produce the proposed record on appeal. The exact timeline of communication between Rogers and Byrd after Rogers made initial

contact with him is unclear; but on 3 April 2023, Byrd made the initial contact to Allyson McNiff ("McNiff"), the court reporter at the 24 January 2023 hearing, to ask if she had a recording and if she was able to enter into an appellate contract. Byrd did not file a notice of appearance as counsel for Rogers until 31 July 2023 and insists that he was not acting as counsel for Rogers even though he communicated with McNiff to assist Rogers to order transcripts.

Between 3 April 2023 and 6 April 2023, McNiff, Byrd, and Rogers exchanged emails regarding the transcript contract. McNiff was initially not receiving emails from Rogers so Byrd stepped in and assisted in connecting Rogers and McNiff via email. After McNiff and Rogers communicated back and forth directly a few times, Byrd stepped in again to assist Rogers send McNiff the transcript deposit. McNiff received the $422.50 transcript deposit "via Intuit from Quintin Byrd, Esquire." McNiff delivered the complete transcript via Byrd's law firm email address on 25 May 2023. Byrd did not take any action in response to McNiff's delivery of the transcript via his email and did not file a notice of appearance for Rogers until 31 July 2023.

On 13 July 2023, Trustee filed a Motion to Dismiss the Appeal pursuant to Rules 11 and 25 of the North Carolina Rules of Appellate Procedure on the basis of Rogers' failure to serve the proposed record on appeal within forty-five days after delivery of the transcript. N. C. R. App. P. 11, 25. On 3 August 2023, Rogers filed a Motion to Extend Time to Serve Proposed Record on Appeal. On 18 September 2023, the matter came on for hearing. Byrd argued the time by which to serve the proposed

record on appeal could not have expired because he was not formally representing Rogers at the time the transcript was ordered and sent to him and, therefore, delivery of the transcript to his email was not valid. Bryd argued "that [he] was helping her in the goal of her being able to hire [him]." On 7 December 2023, the trial court entered an order dismissing Rogers' appeal for failing "to serve a proposed record on appeal upon the Trustee within forty-five days after delivery of all transcripts that have been ordered, the time allowed by Rule 11(b) of the Appellate Rules."

## II. Analysis

On 2 February 2024, Rogers petitioned this Court for writ of certiorari concerning five trial court orders. First, Rogers requests review of the order filed on 7 December 2023 dismissing the appeal of the orders filed on 8 February 2023 denying the motion to set aside foreclosure and on 3 March 2023 allowing additional trustee fees and costs. The trial court's dismissal ended Rogers' ability to appeal these orders. *High Point Bank & Tr. Co. v. Fowler*, 240 N.C. App. 349, 352, 770 S.E.2d 384, 386 (2015) (quoting *State v. Evans*, 46 N.C. App. 327, 327, 264 S.E.2d 766, 767 (1980) ("No appeal lies from an order of the trial court dismissing an appeal . . . the proper remedy to obtain review in such case being by petition for writ of certiorari.")).

Next, Rogers requests review of the two orders entered 14 March 2023 granting the motion for attorney's fees for Irish Creek HOA and granting the motion for attorney's fees for Furlough. Neither of these orders were included in Rogers' notice of appeal to this Court filed on 27 March 2023.

## A. Trial Court Dismissal of Appeal

"[A] motion to dismiss an appeal is a matter within the discretion of the trial court," thus the review is limited to whether "there was a clear abuse of discretion[.]" *E. Brooks Wilkins Fam. Med., P.A. v. WakeMed*, 244 N.C. App. 567, 576-77, 784 S.E.2d 178, 185 (2016) (quoting *Lawrence v. Sullivan*, 192 N.C. App. 608, 614-15, 666 S.E.2d 175, 179 (2008)).

Rogers argues the trial court erred in dismissing her appeal based on its finding that the proposed record on appeal was not timely served because the transcript was erroneously found to have been properly delivered on 25 May 2023. Further, Rogers argues a violation of Rule 11 does not meet the level of "substantial failure" or "gross violation" necessary for dismissal. *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 199, 657 S.E.2d 361, 366 (2008).

"The appellate courts of this state have long and consistently held that the rules of appellate practice are mandatory and that failure to follow these rules will subject an appeal to dismissal." *In re Foreclosure of a Deed of Tr. Executed by Moretz*, 287 N.C. App. 117, 125, 882 S.E.2d 572, 578 (2022) (cleaned up) (quoting *Steingress v. Steingress*, 350 N.C. 64, 65, 511 S.E.2d 298, 299 (1999)). Our Supreme Court has specifically articulated three circumstances where noncompliance of the rules of appellate practice could impair the court's task of review to warrant dismissal. "Our cases indicate that the occurrence of default under the appellate rules arises primarily from the existence of one or more of the following circumstances: (1) waiver

occurring in the trial court; (2) defects in appellate jurisdiction; and (3) violation of nonjurisdictional requirements[.]" *Dogwood*, 362 N.C. at 194, 657 S.E.2d at 363. Rule 11 is a nonjurisdictional requirement of the appellate rules.

In *Dogwood*, our Supreme Court declared the appropriate analysis for appellate courts grappling with violations of nonjurisdictional appellate rules:

> [T]he appellate court may not consider sanctions of any sort when a party's noncompliance with nonjurisdictional requirements of the rules does not rise to the level of a "substantial failure" or "gross violation." In such instances, the appellate court should simply perform its core function of reviewing the merits of the appeal to the extent possible.
>
> . . . .
>
> To summarize, when a party fails to comply with one or more nonjurisdictional appellate rules, the court should *first* determine whether the noncompliance is substantial or gross under Rules 25 and 34. *If it so concludes, it should then determine* which, if any, sanction under Rule 34(b) should be imposed. Finally, if the court concludes that dismissal is the appropriate sanction, it may then consider whether the circumstances of the case justify invoking Rule 2 to reach the merits of the appeal.

362 N.C. at 199-201, 657 S.E.2d at 366-67 (emphasis added).

On appeal, Appellees assert the trial court properly dismissed Rogers' appeal because she violated three rules of Appellate Procedure. However, the trial court cited only Rule 11(b), the failure to serve a proposed record on appeal within forty-five days after delivery of all transcripts ordered, as the basis for granting dismissal of the appeal pursuant to Rule 25. N.C. R. App. P. 11(b). Rule 25 states:

> If after giving notice of appeal from any court . . . the appellant shall fail within the times allowed by these rules or by order of court to take any action required to present the appeal for decision, the appeal may on motion of any other party be dismissed.

N.C. R. App. P. 25(a).

While a party's "failure to timely serve the proposed record, standing alone, may warrant dismissal[,]" our Supreme Court has stated, "[w]e stress that a party's failure to comply with nonjurisdictional rule requirements normally should *not* lead to dismissal of the appeal." *In re Foreclosure of Moretz*, 287 N.C. App. at 124, 882 S.E.2d at 577; *Dogwood*, 362 N.C. at 198, 657 S.E.2d at 365 (emphasis added).

> In determining whether a party's noncompliance with the appellate rules rises to the level of a substantial failure or gross violation, the court *may* consider, among other factors, whether and to what extent the noncompliance impairs the court's task of review[,] [] whether and to what extent review on the merits would frustrate the adversarial process[,] . . . [and] the number of rules violated, although in certain instances noncompliance with a discrete requirement of the rules may constitute a default precluding substantive review.

*Dogwood,* 362 N.C. at 200, 657 S.E.2d at 366-67 (emphasis added).

Here, it appears the trial court failed to complete the first step of the *Dogwood* analysis as there is not a determination of whether Rogers' noncompliance with Rule 11(b) constitutes a substantial or gross violation *before* it subsequently dismisses her appeal for failing "to serve a proposed record on appeal upon the Trustee within forty-five days after delivery of all transcripts that have been ordered[.]" A dismissal

cannot even be considered until the trial court has determined there is a substantial or gross violation. *Lee v. Winget Rd., LLC*, 204 N.C. App. 96, 102 (2010) ("Neither dismissal nor other sanctions under North Carolina Rules of Appellate Procedure 25 or 34 should be considered unless the noncompliance is a 'substantial failure' to comply with the Rules or a 'gross violation' of the Rules."). The trial court further states in its conclusions of law:

> 4. Ms. Rogers has demonstrated a pattern of neglecting to take timely action with regard to her legal affairs.
>
> 5. Ms. Rogers has demonstrated a lack of candor with the Court throughout her participation in these proceedings.
>
> 6. Ms. Rogers failed to serve a proposed record on appeal upon the Trustee within forty-five days after delivery of all transcripts that have been ordered, the time allowed by Rule 11(b) of the Appellate Rules. The aforementioned failure is solely attributable to Ms. Rogers.
>
> 7. Ms. Rogers failed to take the steps required to present her appeal for decision and the aforementioned failure renders her appeal subject to dismissal pursuant to Rule 25(a) of the Appellate Rules.

Based on these conclusions, the trial court has not determined whether Rogers' noncompliance with our rules of appellate procedure amount to a substantial or gross violation. However, the trial court goes on to treat the noncompliance as a substantial or gross violation by dismissing Rogers' appeal based on the consideration of a single appellate rule violation and what appears to be concern for Rogers' character for honesty and "regard" for "her legal affairs." We hold the trial court's dismissal of

Rogers' appeal based on these considerations in addition to its failure to appropriately determine whether the noncompliance amounted to a gross or substantial violation before dismissing the appeal constitutes an abuse of discretion. *See Dogwood*, 362 N.C. at 199-201, 657 S.E.2d at 366-67. We grant Rogers' petition for writ of certiorari and address the merits of her appeal.

## B. Service of the Amended Notice of Foreclosure Hearing

"A motion for relief under Rule 60(b) is addressed to the sound discretion of the trial court and appellate review is limited to determining whether the court abused its discretion." *In re Foreclosure of George*, 377 N.C. 129, 140, 856 S.E.2d 483, 491 (2021) (quoting *Sink v. Easter*, 288 N.C. 183, 198, 217 S.E.2d 532, 541 (1975)). An abuse of discretion is only found when "the trial court's determinations are 'manifestly unsupported by reason.'" *In re George*, 377 N.C. at 140, 856 S.E.2d at 491. "As a result, 'a ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.'" *Id.* If a judgment is found void under Rule 60(b)(4) due to a defect in service of process, the trial court abuses its discretion if it does not grant a motion to set aside. *Cnty. of Mecklenburg v. Ryan*, 281 N.C. App. 646, 652, 871 S.E.2d 110, 116 (2022).

On 8 November 2022, Rogers filed the Amended MSA on the basis of Rule 60(b) and (c), which allow a party to obtain relief from a final judgment or order for several reasons, including when "[t]he judgment is void" or when "[a]ny other reason

justifying relief from the operation of the judgment" exists. N.C. Gen. Stat. § 1A-1, Rule 60(b)(4), (6). Rogers asserted in her motion that she was "never properly served notice of the foreclosure proceeding," and was unaware her home had been foreclosed on and sold until Furlough, the high bidder, called her by telephone to inform "her that he had purchased her home." Further Rogers asserted,

> [t]he record for the foreclosure proceedings shows that it was fatally defective because the HOA failed to meet the basic, fundamental requirement of providing Ms. Rogers with Rule 4 service. Because her basic due process rights were violated – and because the sale price for her Home was grossly inadequate – this sale and deed should be set aside.

Rogers argued the affidavit of service of process relied entirely on a "facially defective mailing to claim that it served [her] with the notice of hearing" because Rogers herself did not sign the certified mail receipt. The electronic return receipt printout reflects delivery by a notation made by the mail carrier, in partial compliance with Covid-19 procedures.

On 9 December 2022, a hearing on Rogers' Amended MSA took place before the Pitt County Clerk of Court. The Clerk ultimately found the *presumption of service* was met by Trustee and that Rogers was unable to *rebut the presumption* of proper service. Additionally, the Clerk found there was no need to consider Rogers' motion regarding adequacy of purchase price because notice for the 21 October 2021 hearing was proper and accordingly denied Rogers' Amended MSA. Rogers filed a notice of appeal to the Superior Court on 22 December 2022. The Superior Court heard

arguments from the parties on 24 January 2023 and denied Rogers' Amended MSA for reasons similar to those of the Clerk of Court.

On appeal, Rogers argues the trial court incorrectly found the USPS Covid-19 protocols evidencing delivery to be effective service of process during the 24 January 2023 hearing on her Amended MSA. Rogers argues there is no evidence the mail carrier personally delivered the notice to the addressee and that the trial court wrongly determined Trustee's affidavit of service was sufficient to create a rebuttable presumption of service, thus the burden was improperly shifted to Rogers. We agree.

Trustee purported to complete service of process by sending the Amended NOH to Rogers via USPS certified mail to the Subject Property address. Service of process is authorized "[b]y mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and *delivering to the addressee*." N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(c) (emphasis added). Trustee, in accordance with N.C. Gen. Stat. § 1-75.10(a)(4), filed an affidavit of service of process with the court. N.C. Gen. Stat. § 1-75.10(a)(4). Trustee attached to the affidavit a copy of a USPS electronic delivery receipt and printout for the Amended NOH as evidence of proof of service.

N.C. Gen. Stat. § 1-75.10(a)(4) governs service of process and states:

> (a) Where the defendant appears in the action and challenges the service of the summons upon him, proof of the service of process shall be as follows:
>
> . . . .

(4) Service by Registered or Certified Mail . – In the case of service by registered or certified mail, by affidavit of the serving party averring:

a. That a copy of the summons and complaint was deposited in the post office for mailing by registered or certified mail, return receipt requested;

b. *That it was in fact received as evidenced by the attached registry receipt or other evidence satisfactory to the court of delivery to the addressee*; and

c. That the genuine receipt or other evidence of delivery is attached.

N.C. Gen. Stat. § 1-75.10(a)(4) (emphasis added).

In determining whether service of process is valid, our Supreme Court has stated:

"Where a statute provides for service of summons or notices in the progress of a cause by certain persons or by designated methods, the specified requirements must be complied with or there *is no valid service*." Therefore, where service of process is had by leaving the summons and complaint with a person other than the named defendant the substitute person must be a "person of suitable age and discretion," who lives with defendant in his "dwelling house or usual place of abode," and the summons must be left with the substitute person *at their usual* place of abode. *If delivery is made elsewhere the service is invalid.*

*Guthrie v. Ray*, 293 N.C. 67, 69-70, 235 S.E.2d 146, 148 (1977) (cleaned up) (emphasis added) (quoting *S. Lowman v. Ballard & Co.*, 168 N.C. 16, 18, 84 S.E. 21, 22 (1915)). This Court in *Granville Medical Center v. Tipton*, stated that "Rule 4(j2)(2) raises a presumption that the person who *received the mail* and *signed* the receipt was an

agent of the addressee authorized to be served or to accept service of process." *Granville Med. Ctr. v. Tipton*, 160 N.C. App. 484, 492, 586 S.E.2d 791, 797 (2003).

Here, the record on appeal indicates Trustee sent Rogers four pieces of mail via USPS certified mail: (1) COL 1, (2) COL 2, (3) NOH, and (4) the Amended NOH. COL 1, COL 2, and NOH all indicate on the USPS electronic delivery receipts that they were "Delivered, Left with Individual." The COL 1 electronic delivery receipt appears to say "covid 19" in place of the signature of recipient but does not include *any* indication it was actually left with an individual as no initials or names are included. The COL 2 electronic delivery receipt contains illegible letters or some sort of symbol in front of "19," also not including *any* indication it was actually left with an individual. The NOH electronic delivery receipt, similar to COL 2, contains illegible letters or some sort of symbol in front of "19," again not including *any* indication it was actually left with an individual. However, the Amended NOH electronic delivery receipt, the only certified mail referenced in Trustee's affidavit as proof of service, veers further away from offering proof of delivery as it does not even indicate it was delivered to an individual; the Amended NOH electronic delivery receipt states it was "Delivered to Agent *for* Final Delivery." Additionally, the mail carrier's notation in lieu of a signature appears to read "DLGC19n2" and the receipt contains no other initials or names. Trustee does not provide any additional proof of final delivery of the Amended NOH or who the agent was who received the delivery and was to complete the final delivery. As Trustee's affidavit lacks both a return

- 22 -

receipt with a proper signature and *any* indication of who received the Amended NOH, the affidavit cannot meet the burden to establish the presumption of valid service. *See id.* at 491-93, 586 S.E.2d at 796-98.

This Court has issued unpublished opinions on the issue *sub judice*. Although "unpublished opinion[s] establish[] no precedent and [are] not binding authority" they may be used as persuasive authority and we find the analyses set forth in the following unpublished opinions cited herein to be persuasive and compelling. *Long v. Harris*, 137 N.C. App. 461, 470, 528 S.E.2d 633, 639 (2000). This Court has "previously held service [was] insufficient in cases where the signature line on the return receipt of registered or certified mailings does not reflect actual receipt by a natural person, either the addressee themselves or an authorized agent." *Luxeyard, Inc. v. Klinek*, 293 N.C. App. 472, 899 S.E.2d 926, 2024 WL 1635646, at *3 (2024) (unpublished) (citing *see Yves v. Tolentino*, 287 N.C. App. 688, 689-90, 884 S.E.2d 70, 71-73 (2023); *Hamilton v. Johnson*, 228 N.C. App. 372, 378-79, 747 S.E.2d 158, 162-63 (2013); *see also Scott v. Vural*, 288 N.C. App. 104, 883 S.E.2d 661, 2023 WL 2377787, at *2-3 (2023) (unpublished)). Indeed, the purpose of sending notice by certified mail is to ensure that it is delivered to a natural person such that actual notice of the proceedings be made known to the addressee. USPS Covid-19 protocols allowing contactless service of certified mail "cannot be held to comply with the purposeful practice of service under Rule 4(j)(1)(c)." *Luxeyard*, 2024 WL 1635646, at *3.

It is well established that "[t]he purpose of a summons is to give notice to a person to appear in a certain place and time to answer a complaint against him." *Yves*, 287 N.C. App. at 690, 884 S.E.2d at 72. Thus, "a person relying on the service of a notice by mail must show *strict compliance* with the requirements of the statute." *In re Appeal of Harris*, 273 N.C. 20, 24, 159 S.E.2d 539, 543 (1968) (emphasis added) (citation omitted). The purpose of certified mail and its signature requirement is to ensure that proof exists that someone actually received the service of notice.

The USPS contactless certified mail delivery procedures implemented during Covid-19 removed attributes of certified mail that generally make it a suitable vehicle for service of process in accordance with N.C. Gen. Stat. § 1-75.10(a)(4). "Where a statute provides for service of summons or notices in the progress of a cause by certain persons or by designated methods, the specified requirements must be complied with or there is no valid service." *Guthrie*, 293 N.C. at 69, 235 S.E.2d at 148 (quoting *S. Lowman*, 168 N.C. at 18, 84 S.E. at 22). Removing the signature confirmation by the addressee leaves certified mail in line with first-class mail in part because no one but the mail carrier can confirm whether the mail was delivered to the addressee as the mail carrier was instructed to print their *own* initials in the signature line. Accepting the mail carrier's notation of "Covid 19" in some variation as a signature defeats the very purpose of requiring the recipient's signature and removes the assurance that the certified mail was actually *received* by a person. Thus, we cannot accept the mail carrier's initials as proof the addressee has received the certified mail. Further, the

mail carrier purporting to deliver the Amended NOH in the case *sub judice* failed to fully comply with USPS Covid-19 protocols in that the mail carrier did not do as instructed, notate the first initial and the last name of the customer receiving the certified mail after viewing the customer's identification card. *Delivering During COVID-19*, at 13.

As stated, Trustee's affidavit of service of process references only the Amended NOH. The electronic delivery receipt attached to the affidavit for the Amended NOH indicates it was "Delivered to Agent for Final Delivery" and includes the mail carrier's Covid-19 notation in lieu of signature. The electronic delivery receipt offers *nothing* as evidence to confirm whether the Amended NOH was left at the Subject Property *at all* as the mail carrier is the only person who made any notation on the receipt and, when doing so, also failed to include the customer's first initial and last name per USPS protocol. Without offering some confirmation that the Amended NOH was actually delivered to an individual able to receive service on behalf of the addressee, the strict requirements of the statute cannot be found satisfied.

Further, the trial court found as a fact that Rogers did *not* sign the return of service green card but that the "green card"[1] indicated it had been served under USPS

---

[1] While the Superior Court references a "green card" return receipt in their findings, and a "green card" is referenced by parties in the hearing transcript, the record on appeal does not contain a "green card." It appears that the "green card" referenced is actually the USPS electronic return receipt printout for the Amended NOH that is referenced throughout this opinion and included in the record.

Covid-19 protocols. However, the return receipt "green card" is not included in the record on appeal, rather printouts of electronic delivery receipts and tracking information are included. While USPS Covid-19 protocols did not require Rogers to *sign* the delivery return receipt, Covid-19 protocols did require the mail carrier to notate the receiving customer's first initial and last name. None of the certified mail electronic delivery receipt records contain a notation of a first initial and last name, thus, the purported delivery of the certified mailing to Rogers cannot be found to comply with even the USPS Covid-19 delivery protocols.

The trial court incorrectly found that Trustee "submitted prima facie evidence that she achieved proper service upon Ms. Rogers under Rule 4 of the North Carolina Rules of Civil Procedure," and wrongly shifted the burden to Rogers to rebut the presumption of proper service. Therefore, we find the trial court committed reversible error in concluding service upon Rogers was proper and complied with Rule 4.

As we are unable to find that the return receipt was even in compliance with Covid-19 protocols, we certainly cannot find that it met the specific requirements of N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(c). We cannot presume valid service when there is no evidence to support the finding of valid service without a proper signature. For this reason, we find the evidence of delivery unsatisfactory, thus we cannot presume valid service under N.C. Gen. Stat. § 1-75.10(a)(4).

Before the Clerk of Court and the Superior Court, and again on appeal, Appellees argue service by posting by the sheriff was proper and sufficient pursuant

to N.C. Gen. Stat. § 45-21.16 and that Rogers has not offered any evidence that the NOH or Amended NOH were *not* posted at the Subject Property to rebut a presumption of service by this method. Rule 4 allows service by publication or by posting when "[a] party [] cannot with due diligence be served by personal delivery, registered or certified mail, or by designated delivery service . . . ." N.C. Gen. Stat. § 1A-1, Rule 4(j1). "In order to utilize service of process by publication under this statute it is necessary that [Trustee] file with the court an affidavit showing the 'circumstances warranting the use of service by publication.'" *Edwards v. Edwards*, 13 N.C. App. 166, 169, 185 S.E.2d 20, 22 (1971). The Clerk of Court addressed this issue in its order stating "[t]he required affidavit regarding posting has not been filed in this matter, and the Trustee may not rely on the sheriff's posting to establish service."[2] We agree Appellees may not rely on service by posting by the sheriff to establish service.

Because of the defect in service of process, the Clerk's order authorizing sale of the Subject Property filed 21 October 2021 is void. Therefore, we hold the trial court abused its discretion in denying Rogers' motion to set aside the foreclosure. *See Ryan*,

---

[2] Further, we note that Trustee's affidavit does not indicate the circumstances warranting the use of posting as required by showing an exercise of due diligence to personally serve Rogers. N.C. Gen. Stat. § 45-21.16(a). "Due diligence dictates that plaintiff use all resources reasonably available to her in attempting to locate defendants. Where the information required for proper service of process is within plaintiff's knowledge or, with due diligence, can be ascertained, service of process by publication is not proper." *Williamson v. Savage*, 104 N.C. App. 188, 192, 408 S.E.2d 754, 756 (1991) (quoting *Fountain v. Patrick*, 44 N.C. App. 584, 587, 261 S.E.2d 514, 516 (1980)).

281 N.C. App. at 652, 871 S.E.2d at 116. Thus, we reverse the trial court's order.

On appeal, Rogers also raises the issue of inadequacy of the purchase price of the Subject Property. Neither the Clerk of Court nor the Superior Court reached Rogers' argument regarding the adequacy of the purchase price realized from the foreclosure sale at trial because they found the foreclosure sale to have been proper. Because we hold service of process to be invalid and reverse the trial court, and because the issue of adequacy of the purchase price was not reached by the court below, we remand this issue to the trial court.

Because we reverse the trial court's order denying Rogers' motion to set aside, the three subsequent orders awarding attorney fees are vacated.

### III.    Conclusion

After careful review of the record and applicable law, we hold the trial court erred by dismissing Rogers' appeal as there was no gross or substantial violation of appellate rules, thus the 7 December 2023 order dismissing Rogers' appeal is reversed. Further, we hold the trial court erred by finding Trustee complied with N.C. Gen. Stat. § 1A-1, Rule 4(j) to create a valid presumption of service and reverse the trial court's order denying Rogers' amended motion to set aside and vacate the foreclosure order. We vacate the three subsequent orders awarding attorney fees. Lastly, we remand to the trial court for consideration of the proper remedy, Furlough's status as a good faith purchaser, and the adequacy of the purchase price.

REVERSED IN PART, VACATED IN PART, AND REMANDED.

Judges ARROWOOD and FREEMAN concur.